2004 SD 101

**Jane DOE and Others Similarly Situated, Applicant and Appellant,**

v.

**Clark QUIRING, in his official capacity as Chief of Police, City of Sioux Falls, and Mike Milstead, in his official capacity as Sheriff, Minnehaha County, Respondents and Appellees.**

No. 22944.

Supreme Court of South Dakota.

Argued June 02, 2004.

Decided Sept. 1, 2004.

Steve Miller, Dennis C. McFarland, Sioux Falls, South Dakota, Attorneys for applicant and appellant.

Lawrence E. Long, Attorney General, Mark Barnett, Chief Deputy Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for Amicus Curiae.

R. Shawn Tornow, Chief Assistant City Attorney, Sioux Falls, South Dakota, Attorney for appellee Quiring.

David R. Nelson, Minnehaha County State's Attorney, Sioux Falls, South Dakota, Attorney for appellee Milstead.

ZINTER, Justice.

[¶ 1.] Jane Doe (Applicant), an incest victim, sought a writ of prohibition to prevent the listing of incest offenders and their offenses on the State's Sex Offender Registry in Minnehaha County. Applicant contended that because the offense of incest involves familial relationships, the listing would violate a statutory prohibition against the release of "identifying information" regarding victims. The trial court

denied the writ, concluding that the listing did not constitute identifying information. We affirm.

## Facts and Procedural History

[¶ 2.] The South Dakota Legislature first enacted a sex offender registration law in 1994. *See* SDCL 22–22–30 *et seq.; Meinders v. Weber,* 2000 SD 2, ¶ 6, 604 N.W.2d 248, 252. However, no public access to the Registry was permitted until a "series of well-publicized tragedies illustrated the futility of sex offender registration without attendant public notification." *Id.* at ¶ 7. As a result of those tragedies, both Congress and the states began enacting legislation (often called "Megan's Law") that required community notification. *Id.* South Dakota amended its law in 1995 "to include a public access provision." *Id.* at ¶ 8. That amendment, codified in SDCL 22–22–40, is the focus of this litigation. It made the Registry a "public record," but prohibited the release of "names or any identifying information regarding the victim." This case presents the question whether the provision protecting victim identifying information precludes public access to the name and type of crime committed when the case involves an "incest" offender.

[¶ 3.] Under the South Dakota framework, all convicted sex offenders are required to "register with the chief of police of the municipality … or, if no chief of police exists, then with the sheriff of the county." SDCL 22–22–31. Pursuant to this statute, Clark Quiring, Chief of Police for the City of Sioux Falls, and Mike Milstead, Sheriff in Minnehaha County, jointly maintain the Registry in that county.

[¶ 4.] The Registry is maintained in two forms. Neither form discloses the victim's name, initials, date of birth or the familial relationship between the offender and the victim. The first is a non-computerized, physical document. That document contains the offender's name, sex, date of birth, address, criminal offense, date of conviction, and the location of the conviction. It does not include the offender's picture. In order for members of the public to access this document, they must go to the Public Safety Building and request to view it.

[¶ 5.] The second form is maintained electronically in a computer accessible format. That Registry is viewable on the internet through a City of Sioux Falls website. It includes photographs of offenders as well as each offender's address, date of birth, sex, race, height, weight, eye color, hair color, criminal offense, date of conviction, and the state and county of the conviction. Although the physical document can only be viewed by visiting the Public Safety Building, the computerized format can be viewed in "[l]ess than five minutes" on the internet. The evidence reflects that when a similar system first became available in Pennington County, that website received 4000 "hits" per day.

[¶ 6.] Applicant was the victim of incest committed by her father when she was less than 21 years old. The offense occurred in Minnehaha County, and both the Applicant and the offender still reside there. The parties stipulated that Applicant's father was convicted of "the crime of *incest*" and that he "had multiple family members" within the class of potential incest victims. They further stipulated that the charging document, which is not a part of the Registry, is a part of a public court file that is available for public inspection. That public document includes Applicant's true name printed in its entirety.

[¶ 7.] Prior to the circuit court's temporary injunction, the Minnehaha County Registry included six incest offenders. Four different familial relationships were involved for those offenders. However, the Registry did not disclose any victims'

name, initials, date of birth, or familial relationship. Moreover, in each case, there were at least two individuals who were within the class of potential victims.

## Analysis and Decision

[¶ 8.] This appeal raises a question of law concerning the construction of SDCL 22–22–40. We review matters of statutory construction de novo. *In re West River Elec. Ass'n, Inc.*, 2004 SD 11, ¶ 14, 675 N.W.2d 222, 226 (citations omitted).

[¶ 9.] We begin our analysis by reviewing the historical evolution of the Registry. In 1994, the Legislature enacted SDCL 22–22–30, which defines the sex crimes for which registration is required. In defining those crimes, the Legislature chose to specifically denominate "incest" as one of the crimes triggering registration. The statute defines this crime as *"[i]ncest as set forth in § 22–22–19.1 if committed by an adult." Id.* (Emphasis added.) Therefore, adults who are convicted of "incest as set forth in SDCL 22–22–19.1" are required to register.

[¶ 10.] However, the information required to be provided by the offender under this initial legislation was limited, and the type of sex crime was not included. The initial registration statute only required filing the offender's:

1. Name and all aliases used;

2. Complete description, photographs, and fingerprints; and,

3. Residence, length of time at that residence, and length of time expected to remain at that residence.

SDCL 22–22–32 (1994). There was also no provision in the initial legislation requiring any public disclosure of this Registry information.

[¶ 11.] However, in 1995, the Legislature took the first of two steps to require public disclosure of the offender's Registry information. *Meinders*, 2000 SD 2, ¶ 8, 604 N.W.2d at 252. The 1995 amendment first made "registration *records collected by local law enforcement* agencies, [ ] registration *lists provided to local law enforcement* [,]" and records kept by state agencies "public records." SDCL 22–22–40 (emphasis added). At the same time, the 1995 legislation protected "identifying information regarding the victim." *Id.*[1]

[¶ 12.] The 1995 amendment defined the scope of the information that must be released to the public. It did so by referring to a general public records act codified in SDCL ch 1–27. SDCL 1–27–1 of that act provides that if any information is kept by a public officer pursuant to statute, it must be available and open to public inspection. That statute provides:

> If the keeping of a record, or the preservation of a document or other instrument *is required of an officer or public servant under any statute* of this state, the officer or public servant *shall* keep the *record*, document, or other instrument *available and open to inspection* by any person during normal business hours.

---

1. SDCL 22–22–40 contains both provisions. It provides:

> *Registration records collected by local law enforcement agencies* pursuant to this chapter, *registration lists provided to local law enforcement* by the Division of Criminal Investigation, and records collected by institutions pursuant to § 22–22–38 for those persons required to register under the pro-

visions of §§ 22–22–30 to 22–22–39 *are public records as provided in chapter 1–27.* Nothing in this section allows the release of *the name or any identifying information* regarding the victim of the crime to any person other than law enforcement agencies, and such victim identifying information is confidential.

(Emphasis added.)

SDCL 1–27–1 (emphasis added). Thus, after the 1995 amendments, because all of the Registry information was required to be kept by law, it was generally subject to public disclosure. *See generally Doe v. Nelson,* 2004 SD 62, ¶ 19 n. 11, 680 N.W.2d 302, 311 n. 11. However, the Legislature had not yet included the "type of sex crime" in that information that was required to be kept and therefore disclosed. *See* SDCL 22–22–32 (1994).

[¶ 13.] Just three years later the Legislature took that second step and required public disclosure of the "type of sex crime." It did so by passing an act "to *require* that certain information *be disclosed* on the sex offender registry." 1998 SD Laws ch 134 (emphasis added). There were two relevant provisions. The first amended SDCL 22–22–32 to specifically require that the "type of sex crime" be kept on the Registry maintained by law enforcement officials. That section then read:

The registration *shall include* the following information:

(1) Name and all aliases used;

(2) Complete description, photographs, and fingerprints;

(3) Residence, length of time at that residence, and length of time expected to remain at that residence;

(4) *The type of sex crime convicted of;* and

(5) The date of commission and the date of conviction of any sex crime committed.[2]

SDCL 22–22–32 (emphasis added). The second provision created a new statute, SDCL 22–22–32.1, which specifically required law enforcement officials to include the "type of sex crime" when providing information from the Registry. SDCL 22–22–32.1 provided:

When a law enforcement official provides information from the sex offender registry, the information shall include the offender's name, address, *the type of sex crime convicted of,* and the date of the commission of the crime and the date of conviction of any sex crime committed.

(Emphasis added.)

[¶ 14.] Thus, since 1998, the type of sex crime has been specifically required to be included on the Registry maintained by law enforcement under SDCL 22–22–32. Furthermore, law enforcement officials have been specifically directed to include the type of sex crime when providing information from the Registry under SDCL 22–22–32.1. And, as is most pertinent to this case, because this information has been collected pursuant to statute, it has

---

2. After a 2003 amendment, the statute now requires the following information on the Registry:

The registration shall include the following information:

(1) Name and all aliases used;

(2) Complete description, photographs, and fingerprints;

(3) Residence, length of time at that residence, and length of time expected to remain at that residence;

(4) *The type of sex crime convicted of;* and

(5) The date of commission and the date of conviction of any sex crime committed;

(6) Social Security number on a separate confidential form;

(7) Driver license number and state of issuance;

(8) Whether or not the registrant is receiving or has received any sex offender treatment;

(9) Employer name, address, and phone number or school name, address, and phone number;

(10) Length of employment or length of attendance at school; and

(11) Occupation or vocation.

Any failure to accurately provide the information required by this section is a Class 1 misdemeanor.

SDCL 22–22–32 (2003) (emphasis added).

been open for public inspection under SDCL 22–22–40 and 1–27–1.

[¶ 15.] Applicant, however, argues that public access[3] to incest offenders and their crimes through the Registry "necessarily" involves the "release of ... identifying information regarding the victim of the crime" in violation of the second paragraph of SDCL 22–22–40. Applicant reasons that because the crime of incest involves familial relationships, the very definition of the crime of incest "so narrows the group of possible victims that identification of the victim is necessarily implicated by the name of the offense."

[¶ 16.] Applicant is correct only to the extent that the definition of incest narrows the group of *possible* victims. The *statutorily described* crime of "incest under SDCL 22–22–19.1," limits possible victims to those who are under twenty-one and are within the degree of consanguinity or affinity within which marriages are prohibited. The statute provides:

> Any person, fourteen years of age or older, who knowingly engages in sexual contact with another person, other than that persons spouse, if the other person is under the age of twenty-one and is within the degree of consanguinity or affinity within which marriages are by the laws of this state declared void pursuant to 25–1–6, is guilty of a Class 5 felony[.]

*Id.* However, it must be noted that this class of individuals includes parents and children, ancestors and descendents of every degree, brothers and sisters of the half as well as the whole blood, uncles and nieces or aunts and nephews, and cousins of the half as well as of the whole blood. *See* SDCL 25–1–6.[4]

[¶ 17.] Consequently, the statutes at issue only work to disclose a class of relatives who are potential victims, rather than identifying any individual victim. Indeed, Applicant stipulated that at all times relevant to this case, there were multiple family members who fell within her class of potential victims. Nevertheless, she points out that this "class of potential victims, disclosed by the term incest, and further narrowed by the crime victim-age limit, is minuscule compared with the 'general public.'" Applicant further points out that SDCL 22–22–40 prohibits the disclosure of both "the name" and "any" identifying information regarding the victim. Because these are specific and general categories, Applicant contends that the general category, "any identifying information," should be interpreted to be "limitless in scope, and cannot mean merely the actual, precise identity of the victim, since the word 'name' means that, and since 'any identifying information' must therefore mean something else."

[¶ 18.] We generally agree that the category "any identifying information" is broader than the category "name," and therefore, the broader category encompasses such things as social security numbers, initials, or other information that identifies a particular individual. Howev-

---

3. Applicant stresses that in this appeal she only challenges the *public disclosure* of registry information, while specifically disclaiming any challenge to an offender's duty to register or the sharing of that information among government agencies or personnel.

4. SDCL 25–1–6 provides:
   Marriages between parents and children, ancestors and descendents of every degree, and between brothers and sisters of the half as well as the whole blood, and between uncles and nieces, or aunts and nephews, and between cousins of the half as well as of the whole blood, are null and void from the beginning, whether the relationship is legitimate or illegitimate. The relationships provided for in this section include such relationships that arise through adoption.

er, to interpret this category so broadly to be "limitless in scope" and to include the entire class of all potential victims would result in an impermissibly strained, unpractical, and absurd result. After all, disclosure of any detail of any offense tends to limit the class of potential victims. Therefore, Applicant's construction would completely emasculate the legislative direction to disclose incest offenders and their offenses. Such an interpretation is not permitted. *See generally Peters v. Spearfish ETJ Planning Comm'n*, 1997 SD 105, ¶ 13, 567 N.W.2d 880, 885 (noting that "[w]hen a term is not defined, it must be construed according to its accepted usage, and a strained, unpractical, or absurd result is to be avoided") (citing *Nelson v. South Dakota State Bd. of Dentistry*, 464 N.W.2d 621, 624 (S.D.1991)).

[¶ 19.] Instead, we agree with the trial court's observation that because the Registry does not reveal the victim's familial relationship, age, physical description, address, or gender, a victim could be any one of a number of less than 21–year–old relatives of the offender. Under these circumstances, we believe that the mere listing of the offender and type of offense is not the disclosure of the "identifying information" that the Legislature intended to prohibit. It could not have been the Legislature's intent because, if carried to its logical conclusion, Applicant's position would prohibit

the public disclosure of *any* detail of any offense. We do not think the Legislature intended such an absurd construction when it adopted SDCL 22–22–40.

[¶ 20.] This conclusion is especially compelling in light of the historical fact that the 1994 Legislature specifically denominated the Registry offense at issue as "incest," and the 1998 Legislature required that the "type of sex crime" be "disclosed" to the public. This history clearly suggests that, notwithstanding the narrowing of the class of potential victims, the Legislature knowingly intended that registered "incest offenders" be disclosed to the public. *See In re Estate of Amundson*, 2001 SD 18, ¶ 19, 621 N.W.2d 882, 887 (noting that "[w]hen deciding statutory intent, we presume that the Legislature had in mind previously enacted statutes on the subject").

[¶ 21.] We also note that the Legislature could have limited the scope of victim identifying information in the manner Applicant now suggests when it enacted SDCL 22–22–40, 22–22–32, or 22–22–32.1. For example, the Legislature could have prohibited the release of selected sex offenses such as "incest"; it could have chosen the dissent's preference to repeal the statutory reference to "incest" and redefine the violation of SDCL 22–22–19.1 as sexual contact, rape or something other than "incest;"[5] it could have prohibited

5. The dissent embarks upon this worthy attempt to enact a new requirement, not found in statute, which would allow publication of the offender's name, but not the type of sex crime, *i.e.* "incest." Interestingly, at oral argument, Applicant's counsel believed that Applicant would be satisfied with such a compromise. However, Applicant specifically rejects this compromise in her petition for writ of prohibition.

Applicant states:

Nor is the excision of "incest" from the registry a remedy. This would apply, I am told, to only 8 of the 500 or so registrants

on the current registry.... The absence of the "incest" listing would mean the absence of any identifying listing for that offender, while all other offenders would have offenses listed for them. This would by itself indicate that "incest" was the undisclosed offense. The only way to protect Applicant's statutory ... rights is to delete the offender listings entirely, for those offenders (like the one involving Applicant as the victim) which lists "incest" as the lone offense. We should not, therefore, create a remedy that Applicant has specifically rejected.

the release of any information that *could or might tend to* identify a victim upon investigation; or, it could have made the word "incest" confidential as it did for the social security numbers that it also required to be kept in the Registry. *See* SDCL 22–22–32(6) (2003).[6] However, it did not take any of these steps to restrict use of the word "incest." On the contrary, as previously pointed out, the Legislature went so far as to specifically denominate this offense as "incest," and further required that this type of crime be disclosed to the public. We therefore agree with City and County that "the legislature's intent was to prevent the disclosure of only that information which, on its face, would directly reveal the victim's identity."

[¶ 22.] Applicant alternatively argues that SDCL 22–22–32.1, which requires that the "type of sex crime" be included in the information *provided by law enforcement,* is only applicable to inter-law enforcement exchanges. However, this argument is not supported by the text or history of the Registry legislation. As was previously noted, the 1995 and 1998 amendments specifically mandated *public disclosure* of the type of sex crime. Therefore, the text of the chapter as a whole does not suggest that the disclosure contemplated in SDCL 22–22–32.1 was limited to inter-agency exchanges. *See Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611 (noting that the intent of a statute must be determined from the statute as a whole, as well as enactments relating to the same subject).

[¶ 23.] Second, even if we were to agree with this inter-agency disclosure argument under SDCL 22–22–32.1, the "type of sex crime" must still be publicly disclosed under other statutes. Notably, apart from SDCL 22–22–32.1, the type of sex crime must be included in the Registry each year *by the offender* pursuant to SDCL 22–22–32 and SDCL 22–22–31.4.[7] These provisions require sex offenders to register and re-register annually, disclosing the information required by SDCL 22–22–32. Because the registration information required by SDCL 22–22–32 includes the "type of sex crime," there is a sepa-

---

It is also hard to accept the dissent's justification for a new, court created exception for one type of sex offense. The dissent asserts its new requirement is justified because the "plain and ordinary" dictionary meaning of this type of sex offense, committed among family members, is known as "rape" or "sexual contact," rather than incest. *See infra* ¶ 32. However, it is hard to imagine that any member of the Legislature, let alone the public, would categorize incest in those terms. It must finally be remembered that the dissent's fashioning of a new exception *requiring excision* of "incest," but no other type of sex crime, is an impermissible use of the extraordinary remedy of prohibition. A writ of prohibition "is preventive in nature rather than corrective." *Sioux Falls Argus Leader v. Miller,* 2000 SD 63, ¶ 25, 610 N.W.2d 76, 87. Therefore, even if the Legislature has not provided "sufficient" protection for incest victims, the Legislature, rather than this Court, should correct the statutes to provide for the new remedy the dissent adopts. Fashioning new remedies is simply not the function of prohibition.

6. *See* SDCL 22–22–32(6) at n. 2, *supra.*

7. SDCL 22–22–31.4 provides:

Any person who is subject to the provisions of § 22–22–31 shall *annually reregister in the same manner as may be provided by law for initial registration.* Such person shall reregister during the calendar month during which the registrant was born. However, if such person has previously registered pursuant to the provisions of § 22–22–31 within ninety days immediately prior to the date of such person's birth, no subsequent reregistration is required pursuant to this section during the current annual reregistration cycle.

A violation of this section is a Class 1 misdemeanor. However, any subsequent violation is a Class 6 felony.

(Emphasis added).

rate, independent statute that makes this information public. Therefore, even if the information *provided* by law enforcement under SDCL 22–22–32.1 were only to be shared among law enforcement agencies, that same information is a public record because it was *required to be collected* from offenders under SDCL 22–22–32.

[¶ 24.] We ultimately conclude that disclosing incest offenders and their type of sex crimes in the manner required by the statutes is not a disclosure of "identifying information regarding the victim" within the meaning of SDCL 22–22–40. Instead, the offender and type of offense only reveal a class of individuals who could be [8] potential victims. While we recognize that speculation, and perhaps further investigation, might further narrow the class of potential victims, the Legislature did not prohibit that eventuality when it mandated such disclosures in 1995 and again in 1998. The Legislature also took no action to make confidential the already public record of Applicant's full name in the circuit court records.

[¶ 25.] Affirmed.[9]

[¶ 26.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 27.] SABERS and MEIERHENRY, Justices, dissent.

---

8. The dissent concedes this point. It states that incest only identifies a limited class of victims that "could breach" confidentiality. *See infra,* ¶ 29. It also states that "identifying the crime as 'incest' significantly *increases the risk* of providing 'identifying information of the victim....' *Infra* ¶ 33.

9. Although Applicant raised an expectation of privacy claim below, she concedes that she "is not raising her constitutional claim [right to privacy] as an independent ground for reversal" in this appeal. Therefore, we do not address that issue. However, to the extent that Applicant does mention the privacy issue in her brief, it is without merit. The trial court concluded, and we agree, that Applicant

MEIERHENRY, Justice (dissenting).

[¶ 28.] I respectfully dissent.

[¶ 29.] The dilemma here is how to give effect to all the provisions of the sex offender registration laws without compromising the confidentiality of the victim's identity. The legislation (1) requires sex offenders to register, (2) makes the information public, and, at the same time, (3) makes "the name or any identifying information" of the victim "confidential." SDCL 22–22–31, –32.1, –40. A conflict arises among the provisions when the crime is identified as "incest." Incest by definition identifies a rather limited class of victims and could breach the confidentiality the law affords the victim. The Chief of Police and Sheriff argue that the law requires the sex crime specifically be identified as incest when publicly disseminated. I do not agree.

[¶ 30.] A resolution to the conflict is found in the plain and ordinary meaning of the statutory language. In applying rules of statutory construction, we have said:

In analyzing statutory language:

[W]e adhere to two primary rules of statutory construction. The first rule is that the language expressed in the statute is the paramount consideration.

---

"has no expectation of privacy in information that is readily available to the public." *See, e.g., Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 494–95, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328, 349 (1975) (noting that "interests in privacy fade when the information involved already appears on the public record"); *Nilson v. Layton City,* 45 F.3d 369, 372 (10thCir.1995) (stating that "[i]nformation readily available to the public is not protected by the constitutional right to privacy"). The information Applicant seeks to protect is already in the public record in the offender's criminal file maintained by the clerk of courts. *See supra* ¶ 6.

The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction.

When we must, however, resort to statutory construction, "[t]he intent of the legislature is 'derived from the plain, ordinary and popular meaning of statutory language.'" (internal citations omitted).

*Petition of West River Electric Assn.*, 2004 SD 11, ¶ 15, 675 N.W.2d 222, 226. The plain, ordinary and popular meaning of the wording of the statute does not require the sex offense be specifically identified as "incest" as the majority states. Initially, the law requires: "When a law enforcement official provides information from the sex offender registry, the information shall include the offender's name, address, *the type of sex crime convicted of,* and the date of the commission of the crime and the date of conviction of any sex crime committed." SDCL 22–22–32.1. (emphasis

added). Additionally, the law prohibits "the release of the name or *any identifying information* regarding the victim of the crime to any person other than law enforcement agencies, and such victim identifying information is *confidential.*" SDCL 22–22–40. (emphasis added).

[¶ 31.] For purposes of sex offender registration, the law provides a list of crimes classified as sex crimes. SDCL 22–22–30.[10] Only one of the crimes listed—sexual contact with a family member—identifies the crime specifically as "incest." SDCL 22–22–30(4). The statutory definition of sexual contact with a family member, however, does not use the term "incest;" it provides:

Any person, fourteen years of age or older, who knowingly engages in *sexual contact with another person,* other than that person's spouse, if the other person is under the age of twenty-one *and is within the degree of consanguinity or affinity within which marriages are by*

---

**10.** SDCL 22–22–30 provides:

For the purposes of §§ 22–22–31 to 22–22–39, inclusive, a sex crime is any of the following crimes regardless of the date of the commission of the offense or the date of conviction:

(1) Rape as set forth in § 22–22–1;

(2) Sexual contact with a minor under sixteen as set forth in § 22–22–7 if committed by an adult and the adult is convicted of a felony;

(3) Sexual contact with a person incapable of consenting as set forth in § 22–22–7.2 if committed by an adult;

(4) Incest as set forth in § 22–22–19.1 if committed by an adult;

(5) Possessing, manufacturing, or distributing child pornography as set forth in § 22–22–24.2;

(6) Sale of child pornography as set forth in § 22–22–24;

(7) Sexual exploitation of a minor as set forth in § 22–22–24.3;

(8) Kidnapping, as set forth in § 22–19–1, if the victim of the criminal act is a minor;

(9) Promotion of prostitution of a minor as set forth in subdivision 22–23–2(2);

(10) Criminal pedophilia as set forth in § 22–22–30.1;

(11) Felony indecent exposure as set forth in former § 22–24–1 or indecent exposure as set forth in § 22–24–1.2;

(12) Solicitation of a minor as set forth in § 22–22–24.5;

(13) Felony aggravated indecent exposure as set forth in § 22–24–1.3;

(14) Bestiality as set forth in § 22–22–42;

(15) An attempt to commit any of the crimes listed in this section;

(16) Any crime committed in a place other than this state which would constitute a sex crime under this section if committed in this state;

(17) Any federal crime or court martial that would constitute a sex crime under federal law; or

(18) Any crime committed in another state if that state also requires that anyone convicted of that crime register as a sex offender in that state.

*the laws of this state declared void pursuant to § 25–1–6,* is guilty of a Class 5 felony.

SDCL 22–22–19.1 (emphasis added). As to the crime of rape, the list simply includes, "Rape, as set forth in SDCL 22–22–1," with no specific reference to incest. SDCL 22–22–30(1).[11]

[¶ 32.] The statute requires that the public be provided "the *type of* sex crime" committed. SDCL 22–22–32.1. According to Webster's New World Dictionary, the word "type" is defined as "a kind, class, or group having distinguishing characteristics in common." Webster's New World Dictionary of the American Language 1538 (Second College Edition 1970). The plain and ordinary meaning of the statute only requires law enforcement to identify the sex crime by kind, class or group, *i.e.* "type." Consequently, in the case of rape of a family member or sexual contact with a family member, the specific crime of "incest" need not be identified. The statutory requirement is met by identifying the "type of crime" as the general category of (1) rape or (2) sexual contact. This is similar to the method used by the Department of Corrections (DOC) on its web page when it reports the crimes for which the prisoners are being held. DOC reports the general categories of "rape" and "sexual contact" and does not specifically identify "incest." State of South Dakota, Department of Corrections (visited July 20, 2004) www.state.sd.us/corrections/adult—stats.htm. The identification of "type of crime" as rape and sexual contact rather than incest gives plain and ordinary meaning to the legislative language and satisfies the purpose of the legislation.

[¶ 33.] We have previously opined that the legislative purpose of the sex offender registration law is twofold: (1) "to alert the public in the interest of community safety" and (2) to assist law enforcement. *Meinders v. Weber,* 2000 SD 2, ¶ 13, 604 N.W.2d 248, 255. We said in *Meinders,*

> We conclude that the Legislature's intention in requiring registration was to accomplish the regulatory purpose of assisting law enforcement in identifying and tracking sex offenders to prevent

---

11. SDCL 22–22–1 defines Rape:

Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:

(1) If the victim is less than ten years of age; or

(2) Through the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or

(3) If the victim is incapable, because of physical or mental incapacity, of giving consent to such act; or

(4) If the victim is incapable of giving consent because of any intoxicating, narcotic, or anesthetic agent or hypnosis; or

(5) If the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim; or

(6) If persons who are not legally married and who are within degrees of consanguinity within which marriages are by the laws of this state declared void pursuant to § 25–1–6, which is also defined as incest; or

(7) If the victim is ten years of age but less than eighteen years of age and is the child of a spouse or former spouse of the perpetrator.

A violation of subdivision (1) of this section is rape in the first degree, which is a Class 1 felony. A violation of subdivision (2), (3), or (4) of this section is rape in the second degree, which is a Class 2 felony. A violation of subdivision (5), (6), or (7) of this section is rape in the third degree, which is a Class 3 felony. Notwithstanding § 23A–42–2 a charge brought pursuant to this section may be commenced at any time prior to the time the victim becomes age twenty-five or within seven years of the commission of the crime, whichever is longer.

future sex offenses, especially those against children. Furthermore, the purpose of the public access to registrant information as provided in SDCL 22–22–40 was to alert the public in the interest of community safety, and to prevent and promptly resolve incidents involving sexual offenses.

*Id.* Initially, the legislative purpose "of alerting the public in the interest of community safety" is satisfied by identifying the crime as "rape" or "sexual contact." To note the crime specifically as incest only serves to narrow the class of victims to a small number capable of being identified. The size of the class of incest victims is limited to family members. The number of family members under the age of twenty-one is even smaller and, in some cases, may include only a couple of children. Publicly identifying the crime as "incest" significantly increases the risk of providing "identifying information of the victim" and may bring opprobrium on family members who were not victims. SDCL 22–22–40. It may also have the effect of making victims or family members reluctant to report the crimes knowing the registry will list the crime as incest. Often incest crimes go unreported because of the fear of public exposure and embarrassment created for the family, victim and perpetrator. Michele L. Earl–Hubbard, *The Child Sex Offender Registration Laws: The Punishment, Liberty Deprivation, and Unintend-*

*ed Results Associated with the Scarlet Letter Laws of the 1990s,* 90 NW U.L.Rev. 788, 856 (Winter, 1996). As one author noted, "Ironically, Megan's Laws may stigmatize the very victims of sex offenses whom they are designed to protect, many of whom are children living in the same house as the sex offender." Daniel J. Solove, *The Virtues of Knowing Less: Justifying Privacy Protections Against Disclosure,* 53 DUKE L.J. 967, 1060 (December 2003.)

[¶ 34.] Whether the perpetrator committed rape against a family member rather than raping a neighbor or neighbor's child or a stranger does not make the perpetrator any more or less dangerous to the community. Identifying the perpetrator as a "rapist" or as having committed the crime of "sexual contact" alerts the public to the danger the offender poses to the community. It also protects the victim from being identified.

[¶ 35.] The additional purpose of "assisting law enforcement in identifying and tracking sex offenders to prevent future sex offenses" is not thwarted. Central to the sex offender registration law is the requirement that a convicted sex offender annually provide certain information to local law enforcement. SDCL 22–22–31 to–31.4. The offender must provide certain information about himself as well as the crime in the registration. SDCL 22–22–32.[12] The information in the registration

12. SDCL 22–22–32 lists the information required:

The registration shall include the following information:
(1) Name and all aliases used;
(2) Complete description, photographs, and fingerprints;
(3) Residence, length of time at that residence, and length of time expected to remain at that residence;
(4) The type of sex crime convicted of; and
(5) The date of commission and the date of conviction of any sex crime committed;

(6) Social Security number on a separate confidential form;
(7) Driver license number and state of issuance;
(8) Whether or not the registrant is receiving or has received any sex offender treatment;
(9) Employer name, address, and phone number or school name, address, and phone number;
(10) Length of employment or length of attendance at school; and
(11) Occupation or vocation.

is forwarded to the Division of Criminal Investigation (DCI). DCI maintains a central file available to law enforcement statewide and to regional and national registries. SDCL 22–22–33 and –34. The DCI makes the file available to all local law enforcement and regional and national registries. SDCL 22–22–33, –34. Law enforcement has access to all the identifying information (including the specific crime) to assist it in tracking the registrants and preventing future offenses.

[¶ 36.] This action deals with a single case out of Minnehaha County. It is not clear whether all "incest" crimes are identified as such in Minnehaha County or elsewhere.[13] The State admitted at oral argument that there is no statewide protocol established for law enforcement to identify sex crimes on the registry. Local law enforcement officers make the decision on how to publicly identify a crime under the registration law. Pennington County may not identify the sex crime as incest on the web page where Minnehaha County may, or vice versa. Consequently, the

identifying information of the victim may be avoided in one area and not in another. Beyond this case, it is unknown if any local law enforcement agency actually uses the term "incest" when providing information to the public on the "type of sex crime."

[¶ 37.] I would reverse the trial court and remand with direction for the trial court to grant the applicant's writ of prohibition in part. The Chief of Police and Sheriff should not be prohibited from listing incest offenders on the Sex Offender Registry; however, they should be prohibited from publicly identifying the crime as "incest."

[¶ 38.] SABERS, Justice, joins this dissent.

---

Any failure to accurately provide the information required by this section is a Class 1 misdemeanor.

13. A Sioux Falls police detective in charge of the sex registry for Minnehaha County identified six registered sex offenders who had been convicted of incest.